IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-00113-FL

| | |
|---|---|
| MARIO PETRUZZO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **& RECOMMENDATION** |
| HEALTHEXTRAS, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This cause comes before the Court upon the following motions referred to the undersigned for review and recommendation pursuant to 28 U.S.C. § 636(b)(1):

**DE-35** Motion to Dismiss by Catalyst Health Solutions, Inc., HealthExtras, Inc., HealthExtras Benefits Administrators, Inc., and HealthExtras Insurance Agency, Inc. ("HealthExtras")

**DE-37** Motion to Dismiss by Defendants Alliant Insurance Services Houston, Inc., Alliant Insurance Services, Inc., and Alliant Services Houston, Inc. ("Alliant")

**DE-39** Motion to Dismiss by National Union Fire Insurance Company ("National Union")

Plaintiff has responded to the motions to dismiss (DE-52-54), and Defendants have replied (DE-65-67). Accordingly, the motions to dismiss are ripe for adjudication. For the reasons stated herein, the undersigned RECOMMENDS that the motions to dismiss be DENIED.

1

## I. BACKGROUND

This dispute arises over an insurance product that Plaintiff contends is illegal under North Carolina law. Plaintiff, a North Carolina resident, filed his complaint in this Court on March 6, 2012 on the basis of diversity jurisdiction. Plaintiff requests class action status for the action, which seeks to recover compensatory and punitive damages based on state law claims of unfair and deceptive trade practices, breach of good faith and fair dealing, unjust enrichment, and civil conspiracy.

In pertinent part, the complaint alleges as follows: On December 21, 2001, National Union, an insurance company based in Pennsylvania and licensed to do business in North Carolina, sought and obtained approval of Policy Series C11695DBG from the North Carolina Department of Insurance. Compl. ¶¶ 2, 65, DE-1. Policy Series C11695DBG ("the Policy Series") is a "blanket accident policy." *Id.* at ¶¶ 65-68, 81. To obtain approval of the Policy Series, National Union represented to the North Carolina Department of Insurance that the Policy Series would be sold only to eligible blanket groups in accordance with N.C. Gen. Stat. § 58-51-75(a)(1)-(7). *Id.* at ¶ 65, 82. Section 58-51-75(a)(1)-(7) of the North Carolina General Statutes defines eligible blanket groups, in pertinent part, as follows:

> (a) Any policy or contract of insurance against death or injury resulting from accident or from accidental means which insures a group of persons conforming to the requirements of one of the following subdivisions (1) to (7), inclusive, shall be deemed a blanket accident policy. Any policy or contract which insures a

> group of persons conforming to the requirements of one of the following subdivisions (3), (5), (6) or (7) against total or partial disability, excluding such disability from accident or from accidental means, shall be deemed a blanket health insurance policy. . . . :
>
> . . . .
>
> (5) Under a policy or contract issued to and in the name of an incorporated or unincorporated association of persons having a common interest or calling, which association shall be deemed the policyholder, having not less than 25 members, and formed for purposes other than obtaining insurance, covering all of the members of such association.

*Id.* at ¶ 68.

On January 1, 2005, National Union, which was owned by American International Group, Inc. ("AIG"), *id.* at ¶ 2, began underwriting an accidental permanent disability insurance product ("disability insurance") issued under the Policy Series and sold by Defendant HealthExtras.[1] *Id.* at ¶¶ 50, 55, 60. The disability insurance was issued to AIG Group Insurance Trust ("AIG Trust") as the policyholder and sold by HealthExtras to individual consumers, including Plaintiff, as plan "members." *Id.* at ¶¶ 50, 55, 61, 75. Defendant Alliant, formerly known as JLT Services Corporation, brokered the disability insurance. *Id.* at ¶¶ 30, 33, 55, 59-61.

Plaintiff enrolled in the disability insurance plan on January 22, 2000 and began paying $9.25 per month to HealthExtras via automatic debit through his credit card. *Id.*

---

1. On October 1, 2008, HealthExtras changed its name to Catalyst Health Solutions, Inc. Comp. ¶¶ 3, 5. For the sake of consistency and ease of reference, this memorandum adopts the complaint's use of the name "HealthExtras" to refer to the corporation now known as Catalyst Health Solutions, Inc. *Id.* at ¶ 7.

3

at ¶¶ 49, 52-54. These premiums increased over the ensuing years without prior approval as required by N.C. Gen. Stat. § 58-51-95(f). *Id.* at ¶¶ 57-58. In January of 2010, Plaintiff received upon request a letter from HealthExtras containing a summary of the "Accident Protection Plan Program" and a "Description of Coverage" for his disability insurance. *Id.* at ¶¶ 59-60. The description of coverage provided in the letter informed Plaintiff that AIG Trust was the policyholder for the disability insurance. *Id.* at ¶¶ 61-62. The description of coverage also specified that that the coverage described thereunder was a "brief description of coverage available under policy series C11695DBG" and that "if any conflict should arise between the contents of this Description of Coverage and the Master Policy SRG 9540519 or if any point is not covered herein, the terms and conditions of the Master Policy will govern in all cases." *Id.* at ¶ 63. Defendants did not provide Plaintiff with a copy of policy series C11695DBG or Master Policy SRG 9540519. *Id.* at ¶ 64.

Plaintiff alleges Defendants essentially issued the disability insurance to themselves; that is, to AIG Trust, an alter-ego of National Union, with premiums collected for the benefit of HealthExtras. *Id.* at ¶ 75. AIG Trust does not, however, qualify as an eligible blanket group under N.C. Gen. Stat. § 58-51-75(a)(1)-(7), because the AIG Trust group was formed for the sole purpose of obtaining insurance. *Id.* at ¶¶ 67-69. Members of the group such as Plaintiff have no "common interest or calling," but merely "were chosen by HealthExtras and others as a good marketing prospect for the policy." *Id.* at ¶ 69. Members of the group have no access to the master policy that

4

governs the terms and conditions of the insurance coverage. *Id.* at ¶¶ 63-64, 75. Plaintiff alleges that the master policy contains limitations and contradictory terms that render the disability insurance virtually worthless. *Id.* at ¶¶ 64, 74, 76. According to Plaintiff, Defendants issued the policy to themselves in order to avoid scrutiny of the deficiencies of the insurance product. *Id.* at ¶ 74. Plaintiff alleges that "[a]ll of the Defendants' concerted actions in this regard were done to avoid insurance regulation and to disguise the fact that the policy has no value to the actual persons who were and are paying the premiums." *Id.* at ¶ 76.

Because North Carolina purchasers do not fall within a lawful blanket group, Plaintiff asserts that the disability insurance sold to him and all similarly situated North Carolina residents is illegal under North Carolina law. *Id.* at ¶ 72. As such, Plaintiff alleges that the insurance is void and without value. *Id.* at ¶¶ 70, 73, 80, 85. By marketing, selling, and collecting premiums for a product they knew to be illegal and worthless, Plaintiff contends Defendants committed unfair and deceptive trade practices (Count One) and civil conspiracy (Count Five), breached their duty of good faith and fair dealing (Count Two), and were unjustly enriched (Count Three). Plaintiff seeks class action certification, compensatory, and punitive damages.

Defendants contend that Plaintiff fails to state a claim upon which relief may be granted and have filed separate motions requesting dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

5

## II. LEGAL BACKGROUND

The purpose of a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). The court may dismiss a complaint for failure to state a claim only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *See* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley, 355 U.S. at 45-46; Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Accordingly, a district court considering a motion to dismiss under Rule 12(b)(6) "must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level[.]'" Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); *see also* Simmons v. United Mortg. and Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) (unpublished) (same). The court need not accept legal conclusions drawn from the facts, or accept as true any unwarranted inferences, unreasonable conclusions, or arguments by the parties. Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385-86 (4th Cir. 2009).

Defendants contend that Plaintiff's cause of action is time-barred by North Carolina's statute of limitations. A defense based on the statute of limitations ordinarily must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant. *See* Fed. R. Civ. P. 8(c); *see also* Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 427 F.2d 862, 870 (4th Cir. 1970). Thus, as the Fourth Circuit has stated:

> [A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred. But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense "clearly appear[] *on the face of the complaint*."

Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)); Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiff's cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R .Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint."). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." Goodman, 494 F.3d at 466.

With regard to Plaintiff's substantive claims, this Court is sitting in diversity and therefore must apply the law of the forum state, North Carolina. *See* Homeland Training

7

Case 5:12-cv-00113-FL   Document 70   Filed 05/09/13   Page 7 of 20

Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 290-91 (4th Cir. 2010). With these legal precepts in mind, the undersigned considers the motions to dismiss.

## III. DISCUSSION

### A. Statute of Limitations

Defendants argue that Plaintiff's claims rest on the premise that AIG Trust, the policyholder, does not qualify as an eligible blanket group under N.C. Gen. Stat. § 58-51-75(a). The complaint alleges that Plaintiff first learned that AIG Trust was the policyholder for his insurance in a letter he received from HealthExtras on January 5, 2010. Compl. ¶¶ 61-63. Defendants contend, however, that Plaintiff received identical information in a letter sent by HealthExtras on October 27, 2004. Letter, Ex. A, DE-35-1. Because Plaintiff was informed in 2004 that AIG Trust was the policyholder for his insurance, Defendants argue that the purported illegality of the insurance should have been apparent at that time, triggering the four-year statute of limitations for his claim of unfair and deceptive trade practices, *see* N.C. Gen. Stat. § 75-16.2, and the three-year statute of limitations for Plaintiff's remaining claims. *See* N.C. Gen. Stat. § 1-52(1), (5); Housecalls Home Health Care, Inc. v. N.C. Dep't of Health & Human Servs., 200 N.C. App. 66, 70, 682 S.E.2d 741, 744 (2009) (three-year statute of limitations for claims of unjust enrichment); Piles v. Allstate Ins. Co., 187 N.C. App. 399, 403, 653 S.E.2d 181, 185 (2007) (three-year statute of limitations for claims of breach of implied duty of good faith and fair dealing); Carlisle v. Keith, 169 N.C. App. 674, 685, 614 S.E.2d 542, 549 (2005) (three-year statute of limitations for claims of civil conspiracy). Because Plaintiff

8

did not file the instant complaint until 2012, Defendants assert his claims are time-barred and should be dismissed. This argument is unpersuasive.

Dismissal based on the affirmative defense of statute of limitations is appropriate only "in the relatively rare circumstances" where all facts necessary to the affirmative defense "'clearly appear[] *on the face of the complaint*.'" Goodman, 494 F.3d at 464 (quoting Richmond, 4 F.3d at 250). Here, the complaint alleges that Plaintiff did not learn that AIG Trust was the policyholder until January 5, 2010. Thus, on its face, the complaint fails set forth the facts necessary to conclude that Plaintiff's claims are barred by the statute of limitations.

Defendants argue that, as Plaintiff refers to the October 27, 2004 letter in his complaint, the Court may properly consider the letter in ruling on the motion to dismiss without converting the instant motion into one of summary judgment. But incorporation of the October 27, 2004 letter into Plaintiff's complaint would not clearly establish all facts necessary to the affirmative statute of limitations defense. Under North Carolina law, the general rule for claims other than malpractice is that a cause of action accrues as soon as the right to institute and maintain a suit arises. *See* N.C. Gen. Stat. § 1-15(a); Thurston Motor Lines, Inc. v. General Motors Corp., 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962). However, the "continuing wrong" or "continuing violation" doctrine operates as an exception to the general rule. *See* Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C., 345 N.C. 683, 694-95, 483 S.E.2d 422, 429-30 (1997); Birtha v. Stonemor, N.C., LLC, __ N.C. App. __, 727 S.E.2d 1, 7 (2012). "When this

9

Case 5:12-cv-00113-FL   Document 70   Filed 05/09/13   Page 9 of 20

doctrine applies, a statute of limitations does not begin to run until the violative act ceases." Williams v. Blue Cross Blue Shield, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (citing Virginia Hosp. Ass'n. v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989)). "'A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.'" Id. (quoting Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981)). Thus, for the continuing wrong doctrine to apply, the plaintiff must show a continuing violation by the defendant that is occasioned by continual unlawful acts, not by continual ill effects from an original violation. Id.; see also Marzec v. Nye, 203 N.C. App. 88, 94, 690 S.E.2d 537, 542 (2010) (same). To determine whether there is a continuing violation, the court examines the wrong alleged by the plaintiff to determine "if the purported violation is the result of 'continual unlawful acts,' each of which restarts the running of the statute of limitations, or if the alleged wrong is instead merely the 'continual ill effects from an original violation.'" Williams, 357 N.C. at 179, 581 S.E.2d at 423 (quoting Ward, 650 F.2d at 1147).

Here, the complaint alleges continuing acts of wrongdoing by Defendants; specifically, the continued collection of premiums for a product alleged to be illegal, void and without value. The complaint alleges that Defendants continued to collect premiums until 2012. Compl. ¶ 52. Moreover, Plaintiff alleges Defendants' acts constitute unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes. Although the applicable statute of limitations for violation of Chapter 75 is three years, N.C. Gen. Stat. § 75-8 provides that "[w]here the things prohibited in this

10

Chapter are continuous, then in such event, after the first violation of any of the provisions hereof, each week that the violation of such provisions shall continue shall be a separate offense."  Because the facts as alleged in the complaint, if accepted as true, tend to show that Defendants have engaged in continuous violations of N.C. Gen. Stat. § 75-1.1, and as each subsequent violation is a separate offense for the purpose of the statute of limitations, Plaintiff's complaint does not, on its face, disclose that it is barred by the statute of limitations.  *See* Williams, 357 N.C. at 178-179, 581 S.E.2d at 423 (concluding that continuing violation doctrine applied); *see also* Medicare Rentals, Inc. v. Advanced Servs., 119 N.C. App. 767, 771-72, 460 S.E.2d 361, 364 (1995) (concluding that the plaintiff's complaint was not barred by the statute of limitations where the complaint alleged continuous violations of Chapter 75).  As such, the instant case does not qualify as one of the "rare" instances in which Rule 12(b)(6) dismissal of claims as time-barred is appropriate.  Instead, this defense is more properly reserved for consideration on a motion for summary judgment.  *See* CSX Transp. Inc. v. Gilkison, 406 F. App'x 723, 729-30 (4th Cir. 2010) (per curiam) (unpublished) (ruling that a district court erred in dismissing a case under Rule 12(b)(6) where the facts as pled in the complaint did not clearly show that the statute of limitations had run).  Accordingly, the undersigned RECOMMENDS that the motion to dismiss by HealthExtras (DE-35) be DENIED.  To the extent that Alliant and National Union have moved to dismiss Plaintiff's claims on the basis of untimeliness, the undersigned RECOMMENDS that the motions to dismiss (DE-37, DE-39) be DENIED.

## B. Alliant's Motion to Dismiss, DE-37

Alliant contends the complaint contains only minimal allegations that are insufficient to state a claim of relief against Alliant. However, the complaint alleges that Plaintiff entered into a void insurance contract with Alliant as well as the other Defendants that purported to provide Plaintiff with a one million dollar lump sum disability benefit in the event of his disability. Compl. ¶¶ 1, 45-46, 70-77. Plaintiff received correspondence signed by Alliant on behalf of Defendant HealthExtras which identified Alliant as the broker of record for the disability insurance. *Id.* at ¶¶ 55-56, 59-60, 61. The complaint also alleges that Defendants unilaterally increased Plaintiff's premium payments without prior approval as required by N.C. Gen. Stat. § 58-51-95(f). *Id.* at ¶¶ 57-58. According to the allegations, Defendants, including Alliant, issued the disability insurance policy to AIG Trust, an entity Defendants knew did not qualify as an eligible blanket group under N.C. Gen. Stat. § 58-51-75(a), in a deliberate attempt to avoid insurance regulations and meaningful review by any eligible blanket group. *Id.* at ¶¶ 67, 69-70, 77.

At this stage in the proceedings, Plaintiff must show only that his claims are plausible, and that "the factual allegations in the complaint 'are enough to raise a right to relief above the speculative level.'" <u>Andrew</u>, 561 F.3d at 266 (quoting <u>Twombly</u>, 550 U.S. at 555). Alliant's assertions that it was not a party to the contract, that its correspondence with Plaintiff was merely informational and caused no harm, and that Alliant derived no direct benefit from the contract, are all arguments appropriate to the summary judgment stage, when both sides can support their contentions with the

12

evidence of record developed upon discovery. *See* <u>Godfredson v. JBC Legal Group, P.C.</u>, 387 F. Supp. 2d 543, 549-50 (E.D.N.C. 2005) (denying the defendants' motion to dismiss claim of civil conspiracy and observing that "the obligation to submit evidence, rather than relying upon allegations, is triggered by a motion for summary judgment, not a motion to dismiss for failure to state a claim"). Because it does not appear, from the face of the complaint "beyond a doubt that the plaintiff can prove no set of facts in support of his claim [against Alliant] which would entitle him to relief," <u>Conley</u>, 355 U.S. at 45-46, the undersigned RECOMMENDS that the motion to dismiss by Alliant (DE-37) be DENIED.

### C. National Union's Motion to Dismiss, DE-39

National Union contends the complaint should be dismissed (1) because Plaintiff has failed to plead a cognizable injury; (2) the claims are time-barred; and (3) Plaintiff has failed to plead sufficient facts to support his claims. As determined *supra*, Plaintiff's claims are not time-barred. National Union's remaining arguments are addressed separately below.

### 1. Plaintiff Has Alleged Cognizable Harm

National Union argues that the complaint fails to allege injury because Plaintiff nowhere asserts that Defendants have denied coverage for any insurance claim Plaintiff has made pursuant to the terms of the policy. Regardless of any structural or regulatory defects in the insurance, National Union contends that the policy is not void, and that under North Carolina law, Plaintiff would be entitled to enforcement of the insurance

13

coverage should he suffer a covered injury as defined by the terms and conditions of the policy. Because Plaintiff fails to allege sufficient facts to show harm, National Union asserts that the complaint should be dismissed for failure to state a claim.

Under North Carolina law, an insurer's failure to obtain advance approval of an insurance product from the Department of Insurance does not necessarily void the insurance policy. *See* Home Indem. Co. v. Hoechst Celanese Corp., 128 N.C. App. 226, 233, 494 S.E.2d 768, 772-73 (1998); *cf.* Cananwill, Inc. v. EMAR Group, Inc., 250 B.R. 533, 556 (M.D.N.C. 1999) ("Thus, it is apparent that the legislature did not intend for the courts to render insurance contracts unenforceable when the insurance company issuing the policy has failed to comply with state approval provisions."). However, if the insurance product cannot be approved by the Department of Insurance because the governing statutes do not authorize the product, the sale of such insurance violates North Carolina public policy and may be declared void. Richardson v. Bank of Am., N.A., 182 N.C. App. 531, 555, 643 S.E.2d 410, 425-26 (2007), *disc. review improvidently allowed*, 362 N.C. 227, 657 S.E.2d 353 (2008). In *Richardson*, the North Carolina Court of Appeals held that the sale of single premium credit insurance ("SPCI") in association with loans greater than fifteen years' duration violated North Carolina public policy because the governing statutes did not authorize the sale of such insurance and, as such, the Department of Insurance had no ability to approve its sale. *Id.* The credit insurance sold by the defendants was therefore void. The Court of Appeals in *Richardson*

expressly rejected the defendants' argument that the plaintiffs had failed to show proximate damages from their purchase of SPCI:

> Defendants also argue that the failure to obtain regulatory approval for the SPCI did not proximately cause any damage to Plaintiffs. Defendants argue that because Plaintiffs retained the insurance product, the sale of SPCI did not cause them to suffer any damages. However, this argument wrongly supposes that the SPCI sold to Plaintiffs had some value.

*Id.* at 555-56, 643 S.E.2d at 426.

Here, like the plaintiffs in *Richardson*, Plaintiff alleges that the insurance he purchased from Defendants is not authorized under the North Carolina statutes, and has not and could not be approved by the North Carolina Department of Insurance. Compl.¶¶ 84-85. National Union argues that *Richardson* is distinguishable, because the court in that case was "faced with a type of policy that was specifically prohibited by North Carolina statute." National Union Mem. Mot. Dismiss 7, DE-40. This is not accurate. The statute before the court in *Richardson*, N.C. Gen. Stat. § 58-57-1, did not specifically prohibit the sale of SPCI in connection with loans of greater than fifteen years' duration, but rather only authorized SPCI for loans of less than fifteen years' duration. *See* Richardson, 182 N.C. App. 554, 643 S.E.2d at 425; *see also* Order, *Richardson v. Bank of America* 10 ¶ 4, Ex. C, DE-65-3 (superior court observing that "there was no specific or explicit prohibition against [SPCI] being sold or financed in connection with loans longer than 15 years . . . ."). Similarly, the statute at issue here, N.C. Gen. Stat. § 58-51-75(a)(1)-(7), authorizes the sale of disability insurance only to specifically defined

15

blanket groups. As Plaintiff has alleged facts tending to show that the disability insurance sold by Defendants is potentially void, and therefore without value, in accordance with the reasoning of *Richardson*, Plaintiff had stated a plausible claim of injury sufficient to withstand a motion to dismiss.

   2. **Plaintiff's Claims of Good Faith and Fair Dealing, Unjust Enrichment, Civil Conspiracy, and Punitive Damages are Sufficient to Withstand Rule 12(b)(6) Motion**

National Union argues that Plaintiff's claim for breach of the duty of good faith and fair dealing must be dismissed as a matter of law because Plaintiff has nowhere alleged breach of contract. However, the court in *Richardson* explicitly rejected this argument and determined that North Carolina law did not require a party alleging breach of the duty of good faith and fair dealing to allege breach of contract. *See* Richardson, 182 N.C. App. at 556-58, 643 S.E.2d at 426-427. National Union asserts that "*Richardson* is inapposite, as the court's breach of good faith holding is explicitly predicated on the common law duty of good faith owed by a creditor to a debtor, not the contractual duty of good faith." National Union Mem. Mot. Dismiss 12, DE-40. But the court's determination in *Richardson* that the defendants owed the plaintiff a common law duty of good faith and fair dealing, as opposed to a contractual duty of good faith, supports rather than undermines the conclusion that Plaintiff need not allege breach of contract to state a viable claim of breach of duty of good faith and fair dealing under North Carolina law. Plaintiff alleges that Defendants owed him a duty of good faith and fair dealing. Compl. ¶ 94. The nature of any duty owed to Plaintiff by Defendants, if any at all, remains to be

16

Case 5:12-cv-00113-FL   Document 70   Filed 05/09/13   Page 16 of 20

shown. Upon a motion to dismiss based on Rule 12(b)(6), the Court's review is restricted to determining whether the plaintiff's allegations state a claim for which relief may be granted, nothing more. Edwards, 178 F.3d at 243-44. This argument is therefore overruled.

Next, National Union asserts Plaintiff's claim of unjust enrichment should be dismissed because it is an equitable remedy, and Plaintiff has adequate legal remedies available. Unjust enrichment is "a claim in quasi contract or a contract implied in law." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988); *see also* Siskron v. Temel-Peck Enterprises, Inc., 26 N.C. App. 387, 390, 216 S.E.2d 441, 444 (1975) ("When one [party] confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjustly enriched and will be required to make restitution therefor."). To state a claim for unjust enrichment, a plaintiff must allege that: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously. *See* Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 184 N.C. App. 688, 695-96, 647 S.E.2d 111, 116 (2007). National Union correctly observes that "[t]he court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff." Embree Constr. Group, Inc. v. Rafcor, Inc., 330 N.C. 487, 491, 411 S.E.2d 916, 920 (1992). Because Plaintiff alleges economic damages only, National Union contends he cannot state a claim for unjust enrichment. However, the cases cited by National Union do not support this argument, or indeed,

17

even address unjust enrichment. Instead, the cases concern preliminary injunctions and the propriety of granting injunctive relief when purely economic harm is alleged. *See* Southtech Orthopedics, Inc. v. Dingus, 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006) (denying motion for preliminary injunction because the plaintiff failed to show irreparable harm arising from purely economic injury); Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc., No. 3:08-cv-532, 2009 U.S. Dist. LEXIS 12918, at *6 (W.D.N.C. Feb. 3, 2009) (same). National Union cites no authority holding that a plaintiff who has sustained only monetary damages is barred from bringing a claim for unjust enrichment. This argument is therefore overruled.

By further argument, National Union contends that Plaintiff's claim for civil conspiracy must be dismissed because North Carolina law does not recognize an independent cause of action for civil conspiracy per se. *See* Esposito v. Talbert & Bright, Inc., 181 N.C. App. 742, 747, 641 S.E.2d 695 (2007). Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy. Dove v. Harvey, 168 N.C. App. 687, 690-91, 608 S.E.2d 798, 800-01 (2005). "Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." Toomer v. Garrett, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002) (citing Muse v. Morrison, 234 N.C. 195, 66 S.E.2d 783 (1951)). To state a claim for civil conspiracy, plaintiff must allege "'(1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the

18

conspiracy in furtherance of the objectives, and (4) damage to the plaintiff as a result of the actions of the conspirators.'" Godfredson, 387 F. Supp. 2d at 549 (quoting Delk v. Arvinmeritor, Inc., 179 F. Supp. 2d 615, 629 (W.D.N.C. 2002)).

National Union concedes that Plaintiff has alleged all of the elements of a claim of conspiracy, but argues the allegations are "threadbare" and "conclusory." The undersigned disagrees. Plaintiff's claim of civil conspiracy essentially relies and builds upon the allegations supporting his claim of unfair and deceptive trade practices. These allegations are numerous and specific, and provide more than enough detail to "raise [Plaintiff's] right to relief above the speculative level." Simmons, 634 F.3d 754, 768; *see also* Tate v. Sallie Mae, Inc., No. 3:10-cv-00386, 2011 U.S. Dist. LEXIS 93235, at *5-6 (W.D.N.C. Aug. 19, 2011) (citing Godfredson, 387 F. Supp. 2d at 549) (holding that where the plaintiff alleged that the defendants agreed to do unlawful acts, the failure to allege specific facts supporting the existence of such an agreement were not sufficient grounds to dismiss the complaint for civil conspiracy). This argument is accordingly overruled.

Finally, National Union argues that Plaintiff's request for punitive damages should be dismissed, because Plaintiff has otherwise failed to state a claim, and punitive damages may not be awarded independently of an underlying right of recovery. As the undersigned has concluded that Plaintiff's complaint alleges sufficient facts to state several causes of action under North Carolina law, this argument necessarily fails. The undersigned further concludes that Plaintiff has pleaded sufficient facts which, if

accepted as true, would support an award of punitive damages in accordance with N.C. Gen. Stat. § 1D-15.  *See* Richardson, 182 N.C. App. at 555, 643 S.E.2d at 425-26 (rejecting the defendants' argument that the plaintiff failed to show entitlement to punitive damages).

## IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the motions to dismiss (DE-35, DE-37, DE-39) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 9th day of May, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE